1JBROWN, Judge,
dissenting.
Plaintiff, Gertie Richardson, was a notorious and self-proclaimed “bootlegger” who had been arrested, convicted, fined and jailed many times on alcohol-related charges. She operated a cafe and “blind tiger” out of her home. Based on a controlled purchase of alcohol by an undercover officer, a judge issued a warrant to search the Richardson home. The warrant directed the Winnfield Police Department to search for and seize *507 alcohol, money, illegal drugs and drug paraphernalia.
The warrant was executed at 6:30 p.m. on the day it was issued. The search resulted in the seizure of enough alcohol to make a discount liquor store envious, over $5,000 in cash, two guns and suspected drug paraphernalia. Gertie Richardson pled guilty to criminal charges stemming from the evidence seized in the search.
A carport door was forced open when the police received no response to their efforts to enter the house. Once inside, they were required to force open two bedroom doors and a storage room door. I agree with the majority opinion that forced entry was reasonable under the circumstances. To perform their duty, the police were obligated to enter the home and because the method utilized was not excessive, they were entitled to qualified immunity from civil liability. The majority, however, agreed with the trial court’s finding that the “officers, in removing drawers and dumping their contents, breaking eggs on the floor, raking items from shelves, and emptying boxes throughout the house, were clearly unjustified and excessive.”
[2The removal of drawers and dumping of their contents, as well as the emptying of boxes found in the house, was part of the search for contraband. Although this may have added additional clutter to an already disheveled house, no damage occurred. The videotape shows that each room in the house, including the bedrooms, was used as a storage area by plaintiffs. Specifically, the bedrooms contained boxes of cigarettes and snacks, cases of soft drinks, alcohol and other items associated with a bar. The videotape and photographs demonstrate that no package, can or other container was torn open. Large cardboard boxes were overturned with candy and snacks spilling onto the floor; however, these items were in their wrappers.
The videotape shows that dresser and table tops were cluttered with numerous personal items such as lotion, powder, spices, papers and bottles. In fact, while the videotape was being made, plaintiff, Gertie Richardson, stated that her permit was on top of her dresser and that the police did not even bother to take it. Nothing was “raked off’ these dresser and table tops.
The videotape demonstrates that the kitchen was used to stock many items. The kitchen counter tops and shelves were full of items including large cardboard boxes containing many packs of cigarettes. On the floor of the kitchen were several unopened packages of cigarettes. Nothing else was shown to be on the kitchen floor.
The only justification for the majority decision concerns the broken eggs and flour spilled on the floor. Plaintiffs floured and battered chicken in their living room. On a table next to the couch was a bag of flour and a carton of eggs. The flour was spilled on the table and onto the floor |3immediately below the table. The egg carton had fallen to the floor at the bottom of the table and approximately six eggs appeared to have fallen out and broken in front of the couch. The trial court could not factually determine who was responsible. No witness could testify as to how this occurred. In fact, the two police officers quoted by the majority in support of its opinion stated that they did not see any eggs or flour in the house. Although this circumstance was unfortunate, it does not establish an excessive use of force.
This untidy house was used as an illegal bar, i.e. “blind tiger”, cafe and residence. Throughout the house, items such as alcohol, soft drinks, snacks, candy and cigarettes were stored. The police conducted a search in accordance with a warrant issued by a neutral magistrate. The search resulted in the seizure of large amounts of contraband. With the exception of the doors that were forcibly opened, no real damage was done to the house. Our judgment must be tempered with reason. Under the circumstances of this case, the methodology used by the police to perform their legal responsibility was not grossly disproportionate or inspired by malice so as to amount to an abuse of official power that shocks the conscience. Thus, I respectfully dissent.